# New Cumberland Borough, Appellant, *v.* Riverton Consolidated Water Company.

*Municipalities—Boroughs—Water companies—Borough ordinance—Nonpermissive use of streets—Charter rights—Limitation—Sources of supply—Purpose of user—Ground for relief.*

1. Water companies are not required to obtain permission of a borough to lay pipes in its streets, for the manifest reason that their charters give them the right to enter upon the streets and lay their mains without such permission.

2. Where a water company supplies water to a borough under a binding ordinance the company is not prevented from exercising charter rights not inconsistent with the terms of the ordinance simply because no direct reference to the particular rights to be exercised is to

be found therein, even though it be conceded that all general rights of the company inconsistent with the municipal grant would be limited by its terms. The maxim "expressio unius est exclusio alterius" is not to be applied in the construction of such an ordinance so as to deprive the water company of its charter rights.

3. Whether or not such a borough ordinance permits the construction of a water line in the streets is immaterial, where there is no limitation in the ordinance which would affect the company's charter right to enter upon the streets and lay their mains without such permission.

4. A borough ordinance under which a water company supplied water contained the provision that the grantees should have the right "to enter upon the streets and highways of the said borough for the purpose of supplying good water to said borough and the inhabitants thereof. . . . Said water to be mountain water taken from the springs or runs in Fairview Township, York County, Penna., so long as the consumption of the Borough shall not exceed the supply of such springs or runs as may be selected by said Horner, in which event the additional water shall be pumped from the Yellow Breeches Creek." The borough sought to enjoin the laying of a proposed new line partly on the ground that this provision limited the right of the defendant company to pipes conveying water from the springs and runs referred to, so long as they furnished a sufficient supply. It appeared that the water which was to run through the new line came from the Yellow Breeches creek, a source of supply mentioned in the ordinance. *Held*, that even though there may be a sufficient quantity of mountain water from the springs and runs to supply present needs, the company, fixed with the obligation to keep up such supply, can provide for the future by making the water from the creek presently available for the borough.

5. In such a case the fact that the new main may be used by the company for the purpose of transporting water beyond the borough limits, is not sufficient ground for an injunction to prevent the laying of the new main, where it appears that it is not to be used exclusively to supply distant points but "it will also furnish water for the borough" and is to be used for furnishing a circulating system of water with the old pipes, as well as to furnish increased fire protection.

*Practice, C. P.—Answers to points—Evasive answers—Equity.*

6. Litigants and the Supreme Court are entitled to have direct, definite answers placed on the record to all requests for findings, and where the replies are evasive they merely serve to confuse and not to assist a proper determination of the issues.

*Appeals—Specifications of error—Exceptions—Equity.*

7. Specifications of error on appeal in an equity case should show that there were exceptions taken in the court below to the matters

complained of, and should be to the final action of the court on the exceptions.

Argued April 24, 1911. Appeal, No. 94, Jan. T., 1911, by plaintiff, from decree of C. P. Cumberland Co., in equity, Oct. T., 1910, No. 2, dismissing bill in case of Borough of New Cumberland v. Riverton Consolidated Water Company. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction to restrain the defendant company from entering upon the streets and highways of the plaintiff borough and constructing thereon without its consent the water line referred to in the opinion below.

The following excerpts from the opinion of the court below state the facts material to this report: "The borough of New Cumberland is the plaintiff . . . . ,while the defendant is a water company organized by the merger of six other corporations, one of them being the Mountain Water Company, and which was incorporated under the general laws of the commonwealth on February 15, 1896. The complaint of the plaintiff is in substance that the defendant supplies . . . . other places with water, and for the purpose of supplying such other municipalities and places outside of the borough of New Cumberland have constucted or are in process of constructing a filtering plant on the banks of the Yellow Breeches Creek . . . . outside of the limits of the borough of New Cumberland, and that for the purpose of conveying the filtered water from the above mentioned filtering plant to the consumers northward and outside of the borough of New Cumberland the said company proposes and have surveyed and made plans and commenced to dig and install a main water line from said filtration plant to the consumers of said company outside of the borough of New Cumberland, within the borough limits, without the consent of said borough; that said work has just started at the corner of Second and Geary streets within said borough, and the defendant has declared its purpose to be to convey said

main supply water line, through the said borough upon the line of said Geary street for a distance of about twelve hundred feet—the size of said pipe to be from twelve to sixteen inches in diameter—this being done without the consent of the borough authorities and against their protest. . . . It is also averred that the Mountain Water Company supplies water under an ordinance passed by the borough of New Cumberland on January 20, 1896, and is bound by its provisions. The prayer is that the company defendant may be enjoined from digging trenches and laying water pipes on Geary street, or other streets and highways of the borough, and it be decreed that it has no authority so to do. . . .

"The allegation in the bill that the pipe line proposed to be laid is solely for the conveyance of water to localities outside of and beyond the borough of New Cumberland was not supported at the hearing . . . . but the contrary was clearly shown, and not contradicted. . . . The general manager testified that 'the purpose is to supply not only the territory north of New Cumberland, but also to supply a circulating system in New Cumberland, and to increase its pressure.' Richwine, secretary and treasurer of the defendant company, testified that 'the object of the company was to give a larger supply of water for fire protection;' that what was proposed to be installed 'was a grid-iron system, a cross system, connecting each pipe line, so as to give a certain flow, and so there will be no dead ends; so the water will flow through all the pipes of the system—a cross connection of each pipe line with the other.' . . . The defendant is erecting a station and filter plant . . . . and other improvements to its system involving necessarily a very large outlay of money, and testimony was offered to show that one of the incentives to do this was that there had been complaint by citizens of New Cumberland as to the water supply . . . .; that by the laying of the proposed new and larger pipe, and making connections with those formerly laid it will give the circulation required to prevent water from becoming

stagnant in the 'dead ends,' which has heretofore obtained in the existing system of distribution; also that by means of this new pipe line, and the proposed connections, the company will be enabled to give New Cumberland and the other communities which it serves a much more abundant supply, and that of pure filtered water, and a pressure much more serviceable for fire purposes, as already stated. It was also shown . . . . that the establishment of the pumping station and purification works, the laying of a new force main from there to a new reservoir north of White Hill, and the laying of additional street mains in White Hill, Lemoyne and New Cumberland were submitted to Samuel G. Dixon, commissioner of health of the commonwealth, and were approved by him, and permits given to the company defendant . . . . to make the proposed additions and changes to its system, under the powers conferred upon him by the provisions of an Act of assembly approved April 22, 1905, P. L. 260.

"The defendant insists, and we think with some force, that these permits of the commissioner of health should be regarded under the powers conferred upon him by the Act of assembly of April 22, 1905, P. L. 260, in the nature of orders or decrees, which were obligatory upon the company, and which it could not disregard; but even if they be not regarded as legally enforceable, yet it cannot in any aspect of the case be treated otherwise than as most influential in determining whether the plans which the defendant seeks to carry into execution are wise and justifiable or not. It was also urged that the ordinance of January 20, 1896, given to Horner and assigned to the Mountain Water Company, authorizes the entry upon the streets and alleys of the borough.

"After hearing and giving due consideration to what has appeared before us, we have been unable to discover that there is any valid or reasonable objection to the carrying out of its plans by defendant. Indeed, on the other hand, what is proposed seems to promise beneficial results. The borough of New Cumberland will have a larger

and an abundant water supply to draw from. To that from the springs and runs in York County will be added pure filtered water from an inexhaustible source; circulation will be insured in the pipes and stagnation, with consequent deterioration avoided, while the additional pressure provided will render it more serviceable in case of fire, and insure better protection. As a matter of course, the ditches dug in which to lay pipes, will be filled up, and the streets put in equally as good condition for public travel as they were before being entered upon by the defendant. We are, therefore, of the opinion that the plaintiff is not entitled to the relief sought by it in this bill."

The bill was dismissed, after a hearing on the merits, and the plaintiff appealed.

*Errors assigned* were answers to requests for findings, rulings on prayers for the withdrawal of testimony and on the admission of evidence, and the decree dismissing the bill.

*J. W. Wetzel,* for appellant.—In the absence of any legislative right in the defendant to enter upon and occupy the streets of the borough complainant with a water main to carry water supply to outside municipalities not included in the Mountain Water Company charter, the defendant cannot do so without the consent of the said borough.

*S. B. Sadler,* for appellee.—Gas and water companies are not required to obtain permission of a borough to lay pipes in its streets: Dorrence v. Bristol Boro., 224 Pa. 464; Shryock v. North Braddock Boro., 43 Pa. Superior Ct. 508.

The merged company has the powers of each of the constituent companies: Chester County Gas Co. v. Gas & Electric Co., 16 Pa. Dist. Rep. 214.

The orders of the department of health were mandatory.

OPINION BY MR. JUSTICE MOSCHZISKER, July 6, 1911:

While there are numerous specifications of error, the appellant's principal contentions are that the court below failed to give full and proper effect to the ordinance of councils referred to in its opinion; that it admitted incompetent testimony; that it failed to understand and mis-' applied the actions of the health authorities in relation to the matters before it for adjudication, and that the answers to the plaintiff's requests for findings were "evasive, indefinite and not responsive to the issue raised in this case."

Though much might be said in criticism of the manner in which certain parts of the adjudication are stated, after a thorough consideration of the whole record, we are not convinced that an incorrect result was reached or that any of the alleged errors call for a reversal.

Whether or not the orders and permits of the state health authorities to the defendant company were sufficient warrant in law to justify the construction through the plaintiff borough of the water line here objected to, and whether or not the municipal ordinance permits such construction, it is not necessary to decide; for "water companies are not required to obtain permission of a borough to lay pipes in its streets, for the manifest reason that their charters give them the right to enter upon the streets and lay their mains without such permission," (Dorrance v. Bristol Boro., 224 Pa. 464, 472); and there is no limitation in the ordinance which would affect the defendant's right to construct the line in question.

Should it be conceded that all general rights of the water company inconsistent with the municipal grant would be limited by the terms of the ordinance, that would not prevent the defendant from exercising charter rights which are not inconsistent, simply because no direct reference to the particular rights desired to be exercised are to be found in the ordinance. In other words, the maxim "expressio unius est exclusio alterius" is not to be applied in the construction of this ordinance so as to deprive the water company of its charter rights.

It is provided in the ordinance that Horner and his assignees shall have the right "to enter upon the streets and highways of the said borough for the purpose of supplying good water to said borough and the inhabitants thereof. . . . Said water to be mountain water taken from the springs or runs in Fairview Township, York County, Penna., so long as the consumption of the borough shall not exceed the supply of such springs or runs as may be selected by said Horner, in which event the additional water shall be pumped from the Yellow Breeches Creek." The appellant contends that this limits the right of the defendant company to pipes conveying water from the springs and runs referred to, so long as they continue to furnish a sufficient supply. It appears, however, that the water which is to run through the new line is to come from the Yellow Breeches Creek, a source of supply named in the ordinance. Even though there may be a sufficient quantity of mountain water from the springs and runs to supply the present needs of the borough, it does not follow that the water company, fixed with the obligation to keep up such supply, could not provide for the future by making the water from the Yellow Breeches Creek presently available in the borough. Hence the limitation contended for fails.

The findings of the court below are that the new main is not to be used exclusively to supply distant points, but "it will also furnish water for the borough of New Cumberland" and "is to be used for furnishing a circulating system of water with the old pipes as well as to furnish increased fire pressure" needed within the borough. Under these circumstances, the fact that it may also be used by the defendant company for the purpose of transporting water beyond the borough limits, would not be sufficient to justify us in reversing the court below for refusing the relief asked for by the plaintiff.

We are satisfied by our examination of the record and by what is stated by the learned president judge of the court below, to the effect that he was not influenced in

reaching his conclusions by any testimony in the nature of hearsay, that no harmful error was committed in the rulings on the evidence.

Some of the answers to requests may be justly criticised as "evasive." Litigants, and this court, are entitled to have direct definite answers placed upon the record to all requests for findings, and when the replies are evasive they merely serve to confuse, and not to assist a proper determination of the issues. The answers complained of have caused us additional labor in examining the evidence, but we are satisfied that no material harm has been done to the plaintiff.

Equity rule 67 provides that upon appeals to the Supreme Court such matters only as have been excepted to and finally passed upon by the court below shall be assigned for error. The preceding rules provide for the taking of exceptions in the trial court, and rule 65 that, "if no exceptions be filed, all objections shall be deemed to be waived." The assignments in this case do not show that exceptions were taken, or, if taken, how disposed of. For instance, the first specification is: "The learned court below erred in its answer to the first finding of fact for the plaintiff," quoting the request and answer. This specification should have shown that there was an exception taken, and the assignment of error should have been to the final action of the court on the exception. In Landis v. Evans, 113 Pa. 332, 335, we said: "The assignments of error are an essential part of the pleadings in this court, and as such should be so complete in themselves as not to require reference to other parts of the record." Here we must look in other parts of the record for the exceptions and the rulings thereon.

We will not specifically pass upon the twenty-five specifications of error; such of them as it would serve any useful purpose to discuss, have already been touched upon. They are all dismissed and the final decree of the court below is affirmed at the cost of the appellant.